```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,
                                          MEMORANDUM & ORDER
        - against -
                                          00-CV-06029 (KAM)
JACOB EVSEROFF, ET AL.,

                Defendants.
------------------------------X
```

**Matsumoto, United States District Judge:**

The government has moved to appoint a receiver to sell certain real property (155 Dover Street in Brooklyn, or "the Dover Street residence") held in a trust established by defendant Jacob Evseroff ("the Trust"), in order to satisfy Evseroff's tax debts, and to order a date by which the defendant should vacate the Dover Street residence. ("Gov. Mot.," ECF NO. 241.) Evseroff opposes the motion, claiming that the government's tax lien and judgment against defendant are invalid, or, in the alternative, that the appointment of a receiver should be stayed either until defendant's most recent petition to the United States Tax Court is resolved or until defendant is unable to live in his residence. ("Def. Opp.," ECF No. 248.)[1] For the reasons set forth in this Memorandum and

---

[1] Defendant also moved in his opposition for the recusal of the undersigned. (*See* Def. Opp. ¶¶ 12-28.) Defendant's recusal motion was denied on December 2, 2013. (ECF No. 251.)
    The parties have also submitted replies and sur-replies. (*See* Gov. Reply, ECF No. 252; Def. Reply, ECF No. 255; Gov. Sur-Reply, ECF No. 258;

Order, the government's motion to appoint a receiver is granted, and defendant's application for a stay of this appointment is denied. Defendant Evseroff is ordered to vacate the residence within 35 days of entry of this order, as proposed by the government.

## Background

The full history of this case is extensive, and need not be fully recounted for the purposes of the instant motion.[2] In brief, in 2001 the Honorable David G. Trager granted the government's motion to reduce to judgment the United States Tax Court's previous assessments regarding defendant's tax liabilities. *See Evseroff I*, 2000 WL 1728112, at *10, *10 n.3. On July 9, 2002, the Clerk of Court entered final judgment against defendant in the amount of $1,546,682.08, plus statutory interest. *United States v. Evseroff*, No. 00-CV-6029, 2002 WL 1901721 (E.D.N.Y. July 9, 2002) ("*Evseroff J.*").

Lengthy post-judgment litigation ensued to determine what assets could be used to satisfy the judgment and the value

---

Def. Sur-Reply, ECF No. 259.) Defendant filed his sur-reply without permission from the court, and the government has moved to strike that document, as well as defendant's belated motion for leave to file it. (*See* ECF Nos. 260-62.) In light of the rulings below, the motions are terminated as moot. While the court has considered defendant's sur-reply, it provides no new information or argument helpful in deciding the motion to appoint a receiver and has thus has had no bearing on the below decision.

[2] Prior decisions rendered in the case include the following: *United States v. Evseroff*, No. 00-CV-6029, 2001 WL 1571881 (E.D.N.Y. Nov. 6, 2001) ("*Evseroff I*"); No. 00-CV-6029, 2002 WL 1973196 (E.D.N.Y. July 8, 2002); No. 00-CV-6029, 2003 WL 22872522 (E.D.N.Y. Sept. 30, 2003); No. 03-CV-0317, 2004 WL 3127981 (E.D.N.Y. Sept. 22, 2004); No. 00-CV-6029, 2006 WL 2792750 (E.D.N.Y. Sept. 27, 2006).

of those assets.  Specifically, the government sought to reach the Dover Street residence in satisfaction of the judgment, claiming that the property was fraudulently conveyed to the Trust and that the Trust operated as an alter ego or nominee of Evseroff.  Judge Trager presided over a bench trial on this question and ruled that assets held by the trust were not reachable.  *See generally United States v. Evseroff*, No. 00-CV-6029, 2006 WL 2792750 (E.D.N.Y. Sept. 27, 2006).

Upon the government's appeal of Judge Trager's order, the Second Circuit reversed and remanded the case for consideration of additional questions regarding the government's actual fraudulent conveyance and alter ego/ nominee theories. 270 Fed. Appx. 75, 77-78 (2d Cir. 2008).  After the Circuit's decision, the case was reassigned to the undersigned, and the court determined, in light of the factors discussed by the Circuit, that the government could reach all property held by the Trust.  No. 00-CV-6029, 2012 WL 1514860, at *15 (E.D.N.Y. Apr. 30, 2012).  The Second Circuit affirmed this court's decision on the grounds that there was no error in this court's finding that the transfers to the Trust were actually fraudulent.  528 Fed. Appx. 75, 78 (2d Cir. 2013).  Defendant subsequently petitioned for rehearing by the Circuit *en banc*; however, the petition was denied on October 16, 2013.  No. 12-2208 (2d Cir. Oct. 16, 2013.)

During the pendency of the appeal, the tax liens the United States held against defendant Evseroff were erroneously released. (*See* Tax Pet. Ex. C, ECF No. 248, at 78-87 (copies of Certificates of Releases of Federal Tax Liens, dated February 4, 2013).)[3] The government asked that Peggy Gartenbaum, the Associate Area Counsel for the Office of the Chief Counsel of the Internal Revenue Service in Westbury, New York, investigate the lien releases. (Gov. Reply 5; Gartenbaum Decl. ¶ 5, ECF No. 252-2.) Ms. Gartenbaum states that, following a call by defendant's accountant, Fred Blumer, to the IRS's taxpayer helpline, the liens were released in error by an IRS employee who was unaware of the judgment against defendant and the resulting extended period of limitations. (Gartenbaum Decl. ¶ 6.) Mr. Blumer disputes this version of events and avers that he called the IRS to ascertain the status of the tax liens and was informed that they had been closed. (Def. Reply 10.)

On June 5, 2013, at the request of the government, Andrew Barone, an IRS Technical Services Advisor, filed revocations of the certificates of release of the tax liens, as well as new lien notices against defendant and Stuart Kamin, who is now deceased but was the original trustee of Evseroff's trust, at the Manhattan office of the City Register of the City

---

[3] Defendant has appended his November 22, 2013 petition to the United States Tax Court as Exhibit 1 to his opposition papers and requests that it be considered in opposition to the instant motion. (*See* Def. Opp. ¶ 10.) This petition and its exhibits will hereinafter be referred to as "Tax Pet."

4

of New York. (Barone Decl. ¶ 7, ECF No. 252-3; *see also* ECF No. 252-3, at 10 (copies of documents recorded on June 5, 2013).) The notice of federal tax lien reflects a tax liability of $3,898,297.41. (ECF No. 252-3, at 13.) Mr. Barone sent copies of these revocations and lien notices to defendant on June 10, 2013 at the Dover Street residence. (Barone Decl. ¶¶ 8, 10-11.) A copy of the nominee lien was also addressed to Mr. Kamin and sent to the Dover Street residence. (Barone Decl. ¶ 9.) The revocations and then the notices were subsequently recorded in the Brooklyn office of the City Register on June 13, 2013. (Barone Decl. ¶¶ 12-14; *see also* ECF No. 252-3, at 16-30 (copies of documents recorded on June 13, 2013 and associated recording and endorsement cover pages).) With the exception of the nominee lien, Mr. Barone mailed copies of the documents recorded on June 13, 2013 on the same date. (Barone Decl. ¶¶ 15-17.) The revocations and notices of lien were again sent to defendant on December 3, 2013 at the Dover Street residence. (Barone Decl. ¶ 19.)

## Discussion

There is no question that the court has the authority to appoint a receiver in order to satisfy the lien against Mr. Evseroff. The Internal Revenue Code grants United States district courts jurisdiction to "render such judgments and decrees as may be necessary or appropriate for the enforcement

5

of the internal revenue laws," including by ordering the appointment of a receiver. 26 U.S.C. § 7402(a). The Code further specifies that when the United States has a tax lien against a defendant, "the court may appoint a receiver to enforce the lien." 26 U.S.C. § 7403(d). The statute does not require, as defendant contends, that a separate foreclosure process take place prior to appointment of a receiver.[4]

Defendant objects to the appointment of a receiver because, he contends, the United States has released the relevant tax liens and has not reinstated them. In the alternative, he argues that appointment of a receiver is not appropriate at this time because of his pending Tax Court case and because the equities of the case counsel against depriving defendant of his primary residence. For the following reasons, these objections are unavailing.

a. Whether the government's tax liens are valid

Defendant challenges the government's liens on two grounds: 1) that the liens were not properly reinstated after their erroneous revocation; and 2) the amount of the lien filed in June 2013, as calculated by the Internal Revenue Service, is

---

[4] The authorities on which defendant relies in asserting that a separate foreclosure action is necessary are inapposite; the cases cited involve the government moving to foreclose on liens on real property where there were questions about third parties' interests in the property. *See United States v. Boyd*, 246 F.2d 477 (5th Cir. 1957); *United States v. Eshelman*, 663 F. Supp. 285 (D. Del. 1987); *United States v. Brynes*, 848 F. Supp. 1096 (D.R.I. 1994). In any event, defendant appears to have abandoned this argument in his reply and sur-reply papers.

excessive.

As a preliminary matter, the court notes that, regardless of the status of the lien, defendant provides no authority for his contention that any question about a tax lien's validity would invalidate a judgment against him. As the government notes, 26 U.S.C. § 6325 states that a tax lien, not the underlying liability, is released by a certificate of discharge. *See* 26 U.S.C. § 6325(f)(1)(A); *see also Hoyle v. Comm'r*, 136 T.C. 463, 474 (2011) ("A certificate of release is not conclusive proof that the liability is extinguished. The underlying tax liability that is the subject of the [notice of lien] remains until the tax is paid in full or the period of limitations on collection expires" (citing *Boyer v. Comm'r*, 86 T.C.M. (CCH) 615 (2003))). Thus, defendant's assertion that the judgment against him has been released is without basis.

i. Reinstatement of the tax liens

Turning to defendant's contention that the liens against him were not properly reinstated, defendant merely rehashes arguments that the Circuit rejected during his appeal. In May of 2013, defendant moved for the Court of Appeals to find his case moot because the tax liens had been released. Mot. for Suggestion of Mootness, No. 12-2208 (2d Cir. filed May 30, 2013), ECF No. 107. Upon the government's showing that the case was not moot because the liens had been reinstated, the Court of

7

Appeals denied defendant's motion. No. 12-2208 (2d Cir. June 24, 2013). Defendant's arguments here are identical to those raised previously and do not provide any basis for now finding that the liens against him are invalid.

Neither defendant's arguments to the Court of Appeals nor those in opposition to the instant motion address why the liens should not be considered reinstated pursuant to 26 U.S.C. § 6325(f). Section 6325(f)(2) permits a lien to be reinstated if "the Secretary determines that a certificate of release . . . was issued erroneously or improvidently." As of the date notice of revocation has been mailed to the last known address of the taxpayer (provided notice of revocation has already been filed in the relevant registry office), reinstated liens have the same effect as the original lien. *Id.* IRS Technical Services Advisor Barone avers that revocations of the lien releases were recorded in the City Register office in Manhattan on June 5, 2013 and in Brooklyn on June 13, 2013, and copies of the notices appended to Barone's declaration confirm those statements. (Barone Decl. ¶¶ 7, 13; *see also* ECF No. 252-3, at 10-30.) Barone also states that he sent these copies of these notices, after they had been recorded, to the Dover Street residence on June 10, 2013, June 13, 2013, and December 3, 2013 (with the exception of the nominee lien, which was not mailed on June 13, 2013). (Barone Decl. ¶¶ 8-10, 15-16, 19.) From Mr. Barone's

8

statements, it appears that the certificates of release were revoked in accordance with the procedures mandated in Section 6325(f) and thus that the liens remain in force.  In light of this holding, defendant's speculation about the motivation for the liens' release and request for discovery regarding the specific IRS employee who released the liens are irrelevant and moot.

>    ii. Amount of the tax liens

As noted above, the liens state that defendant is liable to the IRS in the amount of $3,898,297.41.  (ECF No. 252-3, at 13.)  Evseroff challenges this amount.  Before turning to the merit of this argument, the court will briefly outline the parties' respective positions. In his papers, defendant argues that the amount of the lien is excessively high in light of the $1,546,682.08 judgment previously entered against him and the payments he has made thus far in satisfaction of that judgment. (*See, e.g.*, Tax Pet. ¶¶ 32-36; Def. Reply ¶¶ 17-18.) Specifically, defendant appears to accept that documentation submitted by the IRS indicates that he owes $2.6 million but disputes the $3.9 million figure.  (Def. Reply ¶ 17.)  Evseroff also claims that even the $2.6 million figure is artificially high, however, because the government inappropriately applied the proceeds from the sale of defendant's Florida property and garnishments from defendant's social security payments to

9

deficiencies for later tax years, rather than applying them to the earliest tax liabilities. (Def. Reply ¶¶ 17-18.)

The government states that the approximately $3.9 million figure is based upon the IRS's computerized calculation of defendant's tax liability, penalties and payments either made by the defendant or applied from the sale or levy of his assets. (Gov. Reply 8-9; Barone Decl. ¶¶ 20-28; ECF No. 252-3, at 32-54 (copies of IRS transcripts for defendant's account).) Mr. Barone notes that the lien amount does not include defendant's 1982 liability or the amounts owed for 1991 and 1992 in part because the 1982 file was not readily available and because the government believes it is unlikely to collect the full amount defendant owes for 1978 to 1981. (Barone Decl. ¶ 27.) Although the government's counsel, Mr. Shapiro, represents that the $3.9 million figure represents some, if not all, of defendant's tax liabilities, he expresses his willingness to hold a hearing on defendant's liability should the proceeds from the sale of the Dover Street residence exceed the $2.6 million liability defendant has conceded exists. (Gov. Sur-Reply 10.)

Defendant's primary ground for disputing the IRS's calculations- that his involuntary payments should have been credited toward his 1978 tax liability first- is meritless. Defendant ignores the fact, as the government notes, that the IRS may apply involuntary and undesignated payments toward a tax

10

liability as it chooses. *See Salazar v. Comm'r*, 338 Fed. Appx. 75, 79 (2d Cir. 2009). Moreover, the government represents that defendant's debt would not be altered even had the payments been credited toward the 1978 liability. (Gov. Sur-Reply 10.) This argument of defendant's thus fails, and he provides no other reason to question the IRS's calculations.

Even had defendant put forth compelling reasons to doubt the IRS's lien determination, however, this dispute is irrelevant to the instant motion. Before the court is the government's limited request for the appointment of a receiver to facilitate the sale of the Dover Street residence. As the property is not yet the subject of the contract of sale, there is no current question of how the sale funds should be distributed, nor is there any indication that the sale of the residence will yield more than the $2.6 million defendant acknowledges may be due. (*See* Gov. Sur-Reply 10 (noting that any sale contract for the property will be subject to approval by the court).) In light of the fact that there may be some question about the precise amount of the lien, the government shall submit an affidavit at the time it files the contract of sale for the residence with the court, calculating the amount of the liability amount and stipulating that the proceeds from the sale of the Dover Street residence do not exceed that amount.

11

b. <u>Whether the appointment of a receiver should be stayed</u>

i. Stay pending a decision from the U.S. Tax Court

Defendant also raised the above arguments regarding the validity and amount of the government's tax lien in a petition in front of the United States Tax Court on November 22, 2013. He now requests that the court stay appointment of a receiver until the Tax Court petition is resolved.

Defendant cites one authority for his assertion that this case should be stayed while the Tax Court considers his petition: 26 U.S.C. § 6651(a). (*See* Def. Opp. ¶ 11.) This section of the Internal Revenue Code governs the amount of additional tax that should be imposed in the case of a failure to pay tax or file a return. It is unclear how this provision relates to defendant's argument. Moreover, the court can find no authority for the proposition that a district court, having rendered judgment in a tax case, should issue a stay while the Tax Court evaluates a related petition. To the contrary, the Code suggests that such a stay would be inappropriate; 26 U.S.C. § 7403 provides that, when an action to enforce a lien has been filed, the district court "shall . . . proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." Defendant's request for a stay prior to the Tax Court's decision is therefore denied.

12

ii. Stay at the court's discretion

Finally, defendant argues that this court should exercise its discretion to stay the appointment of a receiver until such time as defendant no longer resides at the Dover Street address. (Def. Opp. ¶¶ 32-43.) In particular, defendant's counsel cites his client's age, physical condition, history as an attorney, veteran and law-abiding taxpayer, as well as the age of this case, as equities the court should consider in deciding whether or not to appoint a receiver. (Def. Reply ¶¶ 4-7.) Having considered defendant's argument, the court declines to exercise its discretion in this manner.

Defendant relies primarily upon the Supreme Court's decision in *United States v. Rodgers*, 461 U.S. 677 (1983) in arguing that the court has discretion to delay appointment of a receiver. He is correct that the Court has found that courts some discretionary latitude in Section 7403 proceedings. In *Rodgers*, the government sought, pursuant to 26 U.S.C. § 7403, to sell property of delinquent taxpayers that was jointly owned with their non-delinquent spouses in order to satisfy federal tax liens. *Id.* at 680. The Court held that, while the sales were permissible under Section 7403 (provided the spouse was compensated for his or her share of the property), "district courts may exercise a degree of equitable discretion in § 7403 proceedings." *Id.* at 709; *accord United States v. Chesir*, 2011

13

WL 3040536, at *2 (E.D.N.Y. June 27, 2011), *report and recommendation adopted by* 2011 WL 3104392 (E.D.N.Y. July 25, 2011); *United States v. Alfano*, 34 F. Supp. 2d 827, 836 (E.D.N.Y. 1999).  Nonetheless, the Court held that such discretion "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes."  461 U.S. at 711.

Although, pursuant to *Rodgers* and the permissive language of Section 7403, the court could exercise some discretion in the instant case, it respectfully declines to do so.  The concerns that animated the Court's discussion in *Rodgers* are not present here.  First, defendant's wife does not have a joint interest in the Dover Street property.  (Gov. Sur-Reply 3.)  Second, the court cannot agree that postponing the appointment of a receiver is an equitable result.  Defendant's tax obligations have been outstanding for over a decade primarily because of defendant's own obfuscation, including by placing the Dover Street residence in a trust in a manner that the Circuit has found to be actually fraudulent.  *See Evseroff*, 528 Fed. Appx. at 78.  While the court is sensitive to the potential personal difficulties a sale of the Dover Street residence may cause defendant, it is unjust to allow the collection of the long-standing judgment against defendant to be

14

delayed any longer.[5] Defendant's concerns do not outweigh the government's "paramount interest in prompt and certain collection of delinquent taxes," *Rodgers*, 461 U.S. at 711, and the appointment of a receiver will go forward at this time.

## Conclusion

For the foregoing reasons, the government's motion is granted, and its proposed order, ECF No. 241-3, is hereby entered as an order of the court. Defendant Evseroff is ordered to vacate the Dover Street residence within 35 days. The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

Dated: January 16, 2014
Brooklyn, New York

/s
_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

---

[5] Because the court declines to exercise its discretion to delay the sale, it need not address defendant's argument that N.Y. C.P.L.R. 5240, which allows courts to modify the way in which money judgments are enforced, also permits discretion in the appointment of a receiver. (*See* Def. Opp. ¶¶ 29-41.) To the extent that defendant is arguing that Section 5240 affords him certain substantive rights (*see* Def. Reply ¶ 6), however, this contention is incorrect. Section 5240 is a "state procedural rule[]; [it] provide[s] no substantive rights." *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 72 (2d Cir. 2011). Instead, C.P.L.R. 5240 is a "procedural mechanism" that that may aid in the execution of a judgment in federal court pursuant to Federal Rule of Civil Procedure 69(a). *See AXA Versicherung AG v. New Hampshire Ins. Co.*, 2013 WL 1790719, at *2-3 (S.D.N.Y. Apr. 22, 2013).